UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MELISSA HUNT                                                       CIVIL ACTION

VERSUS                                                                  NO. 22-236-SDD-RLB

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 21, 2023.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELISSA HUNT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-236-SDD-RLB** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Melissa Hunt ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). (R. Doc. 1). Having found all the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…").

For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice**.

**I.    PROCEDURAL HISTORY**

On February 11, 2020, Plaintiff filed her application for disability insurance benefits. (Tr. 171). Plaintiff alleges that she became disabled on October 17, 2019, after suffering a Cerebrovascular Accident (stroke), which caused deficits in her cognition, balance, standing, walking, and use of her hands. (R. Doc. 13 at 1). Plaintiff's application for benefits was initially denied by the Social Security Administration on July 27, 2020. (Tr. 88). Thereafter, Plaintiff filed a written request for hearing on January 26, 2021. (Tr. 99-100). An Administrative Law Judge ("ALJ") held a hearing on October 14, 2021, (Tr. 29-58), after which he issued an unfavorable decision on November 3, 2021. (Tr. 9-24). The Appeals Council denied Plaintiff's

request for review of the ALJ's decision on March 11, 2022. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary […] evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the

correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.     ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the

Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff last met the insured status requirements of the SSA on March 31, 2020.

2. Plaintiff did not engage in SGA during the period from her alleged onset date of October 17, 2019, through her date last insured of March 31, 2020. 20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*

3. Through the date last insured, Plaintiff had the following severe impairment: cerebrovascular accident (CVA), migraines, obesity, and neurocognitive disorder. 20 C.F.R. § 404.1520(c).

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d), 404.1525, and 404.1526.

5. After careful consideration of the entire record, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), except she had the following limitations. Plaintiff was capable of occasionally lifting and/or carrying twenty pounds and frequently lifting and/or carrying ten pounds. Plaintiff was able to stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday, all with normal breaks. Plaintiff was further limited to occasionally climbing ramps or stairs. Plaintiff was unable to climb ladders, ropes, or scaffolds. Plaintiff must have avoided all exposure to unprotected heights, dangerous machinery, and moving machinery. Plaintiff could understand, carry out, and remember simple one-to-two step instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, and maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. Plaintiff was limited to repetitive tasks.

6. Through the date last insured, Plaintiff was capable of performing past relevant work as a census worker. This work did not require the performance of work-related activities precluded by Plaintiff's RFC. 20 C.F.R. § 404.1565.

7. Plaintiff was not under a disability, as defined the SSA, at any time from October 17, 2019, the alleged onset date, through March 31, 2020, the date last insured. 20 C.F.R. § 404.1520(f).

IV. **DISCUSSION**

Plaintiff advances three arguments in support of her request to remand, which will be addressed within the framework of the five-step analysis. First, Plaintiff avers that remand is required because the ALJ's RFC assessment is unsupported by substantial evidence. (R. Doc. 13 at 5). In so arguing, Plaintiff asserts that the ALJ ignored highly relevant evidence and failed to follow the proper legal procedure in his assessment of her manipulative limitations. (R. Doc. 13 at 5). Second, the ALJ erred in designating her work as a census worker as relevant. (R. Doc. 13 at 13). Third, the ALJ to failed consider how Plaintiff's treatment would affect her ability to work while assessing her RFC. (R. Doc. 13 at 13).

A. **ALJ's RFC Finding**

1. *Manipulative Limitations*

In her first assignment of error, Plaintiff argues that the ALJ's finding that Plaintiff retained the RFC to perform light work with no manipulative limitations and the capability stand and/or walk for six hours in an eight hour workday is not supported by substantial evidence. (R. Doc. 13 at 6). According to Plaintiff, the ALJ ignored highly relevant medical evidence and failed to conduct a meaningful analysis with respect to Plaintiff's restrictions on standing, walking, and the use of her arms and hands. (R. Doc. 13 at 6). Instead, the ALJ cherrypicked medical evidence that supported his decision to deny Plaintiff's request for benefits. Particularly, Plaintiff argues that the ALJ failed to consider her occupational therapy evaluation, exams by her treating neurologist, and her testimony. Plaintiff first points to her occupational therapy evaluation, which states that she has moderate difficulty in bathing, dressing, handling small items, and opening tight jars. (Tr. 569). It also indicates that Plaintiff is unable to lift or carry groceries, and she is unable to reach an overhead shelf. (Tr. 570). Plaintiff's treating neurologist noted that Plaintiff has sensory loss in her right upper and lower extremities, kinetic coordination

with her left arm, and an inability to tandem gait. (Tr. 375, 377, 379, 383, 390, 395, 476, 477, 667). Plaintiff further testified that she has difficulties with typing and tasks involving hand-eye coordination, and that she can only stand or walk for ten minutes at a time. (Tr. 41, 42).

"A claimant's RFC is 'the most [a claimant] can do despite [her] limitations.'" *Vaugh v. Colvin,* 589 Fed. App'x 238, 242 (5th Cir. 2014) (citing 20 C.F.R. § 404.1545(1)). The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler,* 777 F.2d 298, 302 (5th Cir.1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir.1988); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett,* 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson,* 864 F.2d at 343–44.

Upon review of the Plaintiff's arguments and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's conclusion with respect to Plaintiff's manipulative limitations.

To start, the Court disagrees with Plaintiff's assertion that the ALJ ignored highly relevant evidence and cherrypicked only medical evidence that supported his decision. The ALJ specifically stated that the RFC determination was made "[a]fter careful consideration of the

entire record." (Tr. 14, 17). That the ALJ did not specifically articulate every piece of evidence does not nullify his determination. *Falco v. Shala,* 27 F.3d at 164; *see also Jefferson v. Barnhart,* 356 F. Supp. 2d 663, 675 (S.D. Tex. 2004) ("[I]n interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence."). To support his RFC determination, the ALJ specifically cited the notes and opinions of, among others, Dr. Gerald Barber, Dr. Charles Thompson, Dr. Pedro Oliveira (Plaintiff's treating neurologist), Sydney Whittingslow, MS/OT, and Dr. Bonnie Lammers.

Particularly, on October 23, 2019, Dr. Barber noted that Plaintiff exhibited problems with her penmanship and had vague weakness on the right side, but she had normal musculoskeletal strength and tone. (Tr. 385). Additionally, on October 15, 2019, October 30, 2019, and October 28, 2020, Dr. Charles Thompson noted that Plaintiff had a normal gait. (Tr. 711, 721, 725)

Next, Plaintiff visited Dr. Oliveira on numerous occasions between May 14, 2019, and July 16, 2021. During these visits, Plaintiff's exam revealed that (1) she has normal motor strength in all extremities, which was graded as 5/5 and (2) deep tendon reflexes of 2+ throughout, which were symmetric and intact. (Tr. 375, 377, 379, 383, 390, 395, 667). During her May 14, 2019, August 24, 2019, April 9, 2021, May 14, 2021, visits, Plaintiff (1) exhibited a normal gait and station; (2) her sensory exam was intact in all extremities; and (3) she was able to perform finger to nose well with no tremor or past pinpointing. (Tr. 390, 395, 1282, 1289). From October 24, 2019, through January 21, 2020, Plaintiff demonstrated (1) decreased pinprick in her right arm and leg; (2) slight kinetic tremor with her left arm; and (3) a normal gait base, but she was unable to tandem gait. (Tr. 375, 377, 379, 383). In his report, Dr. Oliveira explained that Plaintiff was limited to less than the full range of sedentary work, and Plaintiff was limited to unskilled work involving simple repetitive tasks. (Tr. 1292, 1296).

Examinations notes from Sydney Whittingslow revealed that the ranges of motion in Plaintiff's right finger, right and left thumb/opposition range of motion were unremarkable. (Tr. 623). Additionally, Plaintiff's right and left wrist active ranges of motion were unremarkable. (Tr. 623). Plaintiff's left wrist extensor muscles, however, were tender. (Tr. 571). Lastly, Plaintiff's sensation in her bilateral hand was normal, and her bilateral grip had improved. (Tr. 625). Plaintiff also showed intermittent improvements with her handwriting. (Tr. 625).

The ALJ also considered the report of the state agency physician Dr. Lammers. Dr. Lammers reported that Plaintiff had no manipulative limitations, but she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 64, 65). Additionally, Plaintiff demonstrated the capability to perform light work when considering her ability to lift, carry, stand, walk, sit, push, and pull. (Tr. 66).

Finally, the ALJ did not completely disregard Plaintiff's subjective complaints. The ALJ considered Plaintiff's complaint that she can only stand and walk for ten minutes and her difficulty with maintain her balance. (Tr. 18). He also considered that Plaintiff does not have hand-eye coordination, and she has difficulty with holding and lifting objects. (Tr. 18). The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence," which shows that Plaintiff "maintained the ability to perform work-related activities within the range of limitations set out in [her RFC]." (Tr. 18). The ALJ did, however, find that in light of her complaints, Plaintiff "would undoubtedly have" some difficulties. (Tr. 22). This determination is supported by Sydney's Whittingslow's notes regarding Plaintiff's tender left wrist extensor muscles. (Tr. 22).

After considering the foregoing, the ALJ found Dr. Oliveira's opinion that Plaintiff was limited to less than full range of sedentary work to be unsupported by Dr. Oliveira, Dr. Barber, Dr. Thompson, and Sydney Whittingslow's evaluation notes, which indicate that Plaintiff has normal musculoskeletal strength and tone, normal sensation in her bilateral hand and grip, and unremarkable range of motion with her right finger, right and left thumb, and right and left wrist, and deep tendon reflexes of 2+ throughout. Instead, the ALJ agreed Dr. Lammer's opinion that Plaintiff could perform light work. (Tr. 21).

The Court finds that the ALJ's RFC determination with respect to Plaintiff's manipulative limitations is supported by substantial evidence. As discussed above, multiple physicians explained that Plaintiff has normal strength and tone, normal sensation in her bilateral hand and grip, unremarkable ranges of motion, normal tendon reflexes, and normal gait.

Lastly, Plaintiff's arguments essentially ask the Court to reweigh the evidence and hold that the evidence cited by Plaintiff outweighs the evidence cited by the ALJ. It is not the Court's role to reweigh the evidence or resolve conflicts. While de novo review could result in a different determination, our review is limited to whether the ALJ's decision is supported by substantial evidence. If it is, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405(g)). Because substantial evidence supports the decision regarding Plaintiff's manipulative limitations, there is no error in the ultimate RFC determination.

2. *Cognitive Deficits*

Plaintiff's argument regarding her cognitive deficits fares no better. Plaintiff argues that the ALJ failed to consider her cognitive restrictions with respect to her memory and attention when determining her RFC. (R. Doc. 13 at 10). Similar to her manipulative limitations argument, Plaintiff asserts that the ALJ ignored relevant evidence pertaining to her cognitive deficiencies

and only cited evidence that discredited Plaintiff. As stated above, the Court may not reweigh the evidence. The ALJ's decision will be upheld if there is adequate evidence to support the ALJ's decision.

Here, in determining Plaintiff's RFC, the ALJ stated that Plaintiff "could understand, carry out, and remember simple one-to-two step instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday." (Tr. 17). Plaintiff, however, is "limited to repetitive tasks." (Tr. 17, 21). To reach this decision, the detailed the medical notes and opinions of Dr. Stephanie Frederic, Dr. Oliveira, Dr. Lauren Rasmussen, Michelle Trahan, SLP, Dr. Laura Eckert, Ph.D., and Dr. Walter Bell.

During her November 6, 2019, visit, Dr. Frederic noted that Plaintiff was alert, fully oriented, calm, and conversant. (Tr. 381). She further noted that Plaintiff had no apparent distress. (Tr. 381). Similarly, in each of Dr. Oliveira notes, she explained that Plaintiff had a normal mental status, and Plaintiff was alert and oriented. (*See e.g.,* Tr. 375, 377, 383). Dr. Oliveira also opined that Plaintiff should be limited to "[u]nskilled work involving simple repetitive tasks which are easily learned, involving only 1 and 2 steps." (Tr. 1296).

On the other hand, Dr. Rasmussen found that Plaintiff was mild-to-moderately impaired with respect to her short and long delay free recall. (Tr. 1278). Accordingly, Dr. Rassmussen opined that Plaintiff "would be very limited in her efficiency and ability to learn new tasks." (Tr. 1279). Likewise, Michelle Trahan, Plaintiff's speech pathologist, found that Plaintiff has "poor recall for list recognition." (Tr. 633). Dr. Trahan also noted that Plaintiff was easily distracted and required re-direction throughout her assessment. (Tr. 633).

Finally, the ALJ explained that Dr. Eckert, the state agency psychologist, and Dr. Bell's, the state agency physician, reports were unpersuasive. (Tr. 21). Dr. Eckert and Dr. Bell each held that there was insufficient evidence to evaluate Plaintiff's claim. (Tr. 21). The ALJ stated that these reports were inconsistent with Plaintiff's CT scan and Dr. Trahan's notes, which showed that Plaintiff has difficulty attending to tasks presented. (Tr. 21).

The ALJ concluded that the relevant medical evidence shows that Plaintiff is alert, has a normal mental status, is fully oriented, calm and conversant, and has a normal mood, affect, and speech. Therefore, Plaintiff could "carry out and remember simple one-to-two step instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in the work setting, and maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday." (Tr. 17). Plaintiff, however, is limited to repetitive tasks. (Tr. 17).

The Court finds that substantial evidence supports the ALJ's decision. In addition to the above medical evidence, Dr. Barber noted that Plaintiff did not have any focal deficits. (Tr. 385). On May 7, 2019, Dr. Ricky Winburn noted that Plaintiff did serial sevens with no issue, and she had a two out three recall after three minutes. (Tr. 400). On May 14, 2019, Dr. Oliveira noted that Plaintiff's recent and remote memory, attention and concentration, and fund of knowledge was normal. (Tr. 395). Importantly, Plaintiff "scored appropriately on" the Montreal Cognitive Assessment. (Tr. 395). Finally, on November 17, 2020, Michelle Trahan noted that Plaintiff's "progress towards goals is good," and Plaintiff "was able to recall 100% accuracy immediately." (Tr. 1125). These notes support the ALJ's RFC with respect to the Plaintiff's cognitive deficits.

### 3.    *Effects of Treatment*

Next, the Court will turn to Plaintiff's third assignment of error. Plaintiff argues that the ALJ failed to consider the effects of Plaintiff's treatment in his RFC assessment. According to Plaintiff, her acute stroke requires "extensive and frequent" doctors' appointments, which "would have caused her to miss all or part of a workday on multiple occasions," at least "twice per month." (R. Doc. 13 at 14).

SSR 96-8P provides that "[t]he RFC assessment must be based on all relevant in the record, such as…[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (*e.g., frequency of treatment, duration, disruption to routine, side effects of medication*) …" The Fifth Circuit has held that "if an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour workday, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity." *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000). "[T]he treatment required to be considered [is] that which [is] current or ongoing." *Sly v. Kijakazi*, No. 3:21-cv-00208-TSL-RHWR, 2022 WL 2082318, at *3 (S.D. Miss. May 24, 2022). A person is disabled when they are afflicted with limitations that prevent them from any substantial gainful activity, not when time constraints from impairments might foreclose a traditional employment schedule. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)

Simply put, the ALJ is required to consider the effects of Plaintiff's treatment if her medical appointments are so frequent that they would "significantly interrupt" her ability to perform a normal, eight-hour workday. *See Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (holding because claimant's daily treatment program for his back condition "would significantly interrupt a normal, eight-hour work day, it was incumbent upon the ALJ and the Secretary to ascertain whether [the claimant's] need for frequent daily traction precluded him from engaging

in gainful activity"); *Wingate v. Astrue*, No. H-08-1966, 2009 WL 3064685, at *19 (S.D. Tex. Sept. 21, 2009) (finding the ALJ erred in failing to discuss claimant's ability to maintain employment where the vocational expert testified that "no more than two absences from work per month would be tolerated" and claimant's medical records showed a high frequency of ongoing mental health treatment—"at least 58 medical appointments over 35 separate days" in a six month period). On the other, if Plaintiff's medical appointments are infrequent, then the ALJ need not consider the effects of treatment in his RFC analysis. *See Pickens v. Comm'r of Soc. Sec. Admin.,* No. 319CV00895DPJBWR, 2022 WL 18107264, at *10 (S.D. Miss. Dec. 12, 2022) (holding that the ALJ was not required to address the frequency of the claimant's medical appointments because the claimant's treatment during the adjudicatory period was minimal).

Here, Plaintiff raised the issue of her frequent medical appointments in her pre-hearing brief and in her request for review of the ALJ's decision. (Tr. 280, 290) (claimant provided no specific course of treatment or scheduled medical appointments other than a general statement about extensive and frequent therapy and a "plethora" of appointments). At the hearing, the ALJ inquired with the vocational expert ("VE") about an employer's "typical tolerance for […] absenteeism." (Tr. 53). The VE responded that that absenteeism becomes a problem when the plaintiff is absent twice per month on an ongoing and sustained basis. (Tr. 53).

Additionally, the medical records show that Plaintiff received regular physical and speech therapy twice a week at Moreau Physical Therapy from December 2019 – August 2021. (Tr. 1030-1125, 1251-1272). Plaintiff also visited her neurologist, Dr. Oliveira, consistently between May 2019 and July 2021. After Plaintiff's reassessment on July 16, 2021, however, Dr. Pedro recommended that Plaintiff "continue in speech therapy" but only attend "periodic booster sessions" after "she has completed her treatment." (Tr. 1279). Dr. Pedro further recommended a

neuropsychological follow-up in two years because Plaintiff "is relatively stable at this point." (Tr. 1279). Considering Dr. Oliveira's recommendation, Plaintiff is no longer (and was not at the time of the ALJ's decision) receiving "ongoing" treatment that would "significantly interrupt" her "ability to perform a normal, eight-hour workday." In addition, to the extent additional follow-up appointments or therapy would be necessary, there is nothing to demonstrate that plaintiff could not attend to those appointments around her work schedule or that such appointments otherwise prevent her from sustaining full time work. Therefore, the ALJ was not required to consider the frequency of Plaintiff's treatment in his RFC assessment.

**B.      Past Relevant Work**

In her second assignment of error, Plaintiff argues that the ALJ erred in categorizing her job as a census worker as relevant work. According to Plaintiff, "to be relevant, past work must have been done long enough (to learn), within the last 15 years and SGA." (R. Doc. 13 at 13) (citing 20 C.F.R. § 404.1565(a)). "Work done only [off-and-on] or for 'brief periods of time' is not relevant." (R. Doc. 13 at 13) (citing 20 C.F.R. § 404.1565(a)). Plaintiff asserts that her job as a census worker is, by its very nature, an "off-and-on" job that is only performed every 10 years for "brief periods of time." (R. Doc. 13 at 13). Additionally, Plaintiff argues that her job as census worker does not qualify as SGA because she did not obtain the requisite SGA earning. In 2010, Plaintiff earned $6,189.46 and in 2020, she earned only $2,541.31.

Plaintiff's argument is unpersuasive. The Court agrees with the Commissioner's assertion that her work as a census worker meets the definition of past relevant work. The SSA defines past relevant work as work that (1) was performed within the past 15 years, (2) was SGA, and (3) last long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560.

Here, the requirements for past relevant work are met. First, Plaintiff performed as a census worker in 2010 and in 2019, which is within the last 15 years.

Next, the Social Security Administration determines the requisite monthly earnings for classifying employment as SGA. A person who is earning more than the set monthly amount is considered to be engaging in SGA. Social Security Administration, Substantial Gainful Activity, https://www.ssa.gov/oact/cola/sga.html (last visited March 30, 2023). The minimum SGA amount was $1,000 per month in 2010 and $1,220 per month in 2019. *Id.* As the Commissioner points out, the General Service pay scale provided on Federalpay.org indicates that census workers earned $2,043.17 monthly in 2010 and $2,186.08 monthly in 2019. (R. Doc. 20 at 10) (citing https://www.federalpay.org/gs/2019/GS-4). Accordingly, Plaintiff's monthly wages in 2010 and 2019 exceeds the minimum monthly earnings, and her employment as a census worker is SGA.

Finally, census work is categorized as unskilled, which is work "that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). "[A] person can usually learn to do the job in 30 days." *Id.* The record does not specify the length of time that Plaintiff worked as a census worker in 2010 and 2019. It does, however, indicate that Plaintiff earned $6,189.46 in 2010. (Tr. 181). As stated above, the General Service pay scale provided on Federalpay.org indicates that census workers earned $2,043.17 monthly in 2010. Considering this information, it is reasonable to assume that Plaintiff performed work as census worker for over one month. Therefore, Plaintiff's employment lasted long enough for her to learn how to do it.

Accordingly, the Court finds that the ALJ properly designated Plaintiff's work as a census workers as past relevant work because it was (1) performed within the last fifteen years, (2) SGA, as it met the minimum monthly earning requirements set out by the Social Security Administration, and (3) was performed long enough for Plaintiff to learn how to do it.

Finally, as the Commissioner points out, even if this conclusion was in error, such error was harmless because the ALJ made an alternative finding at step five that determined that Plaintiff could perform other light, unskilled jobs. That conclusion is supported by substantial evidence based on the testimony of the VE in consideration of the Plaintiff's age, education, work experience and RFC. (Tr. 23-24).

V.   **CONCLUSION**

It is the recommendation of the Magistrate Judge that the final decision of the Commissioner of Social Security be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice.**

Signed in Baton Rouge, Louisiana, on June 21, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**